IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| TIMOTHY J. CUNNINGHAM, SR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.   17-cv-126-RJD |
| | ) | |
| MARCUS JENKINS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

**DALY, Magistrate Judge:**

Plaintiff Timothy J. Cunningham, Sr., an inmate in the custody of the Illinois Department of Corrections ("IDOC"), filed this action pursuant to 42 U.S.C. § 1983, the Americans with Disabilities Act, and the Rehabilitation Act.  Plaintiff's claims arose from his incarceration at Pinckneyville Correctional Center and Lawrence Correctional Center.  Following entry of an order on Defendants' motion for summary judgment, Plaintiff was assigned counsel (*see* Doc. 74).  Plaintiff proceeded to trial on the following claims:

Count 8:      Rehabilitation Act claim against the Illinois Department of Corrections for denial of access to telephone privileges on a comparable basis to non-disabled inmates while Plaintiff was incarcerated at Pinckneyville Correctional Center and Lawrence Correctional Center.

Count 10:    Eighth Amendment claim against Defendant Jenkins for failing to accommodate Plaintiff's disability pursuant to the ADA when he transported him on February 10, 2015 and March 28, 2015, causing Plaintiff to wet himself and suffer humiliation[1].

Following trial, the jury rendered a verdict in favor of Defendants on both counts.  The

---

[1] Following entry of the Court's Order on Defendants' motion for summary judgment, Plaintiff was allowed to proceed on an additional claim designated as Count 11, a First Amendment retaliation claim. Plaintiff voluntarily dismissed this claim on June 29, 2021 (*see* Docs. 145 and 160).

Court entered final judgment in this matter in favor of Defendants on July 15, 2021.

On August 12, 2021 Plaintiff filed a Motion for a New Trial (Doc. 181) that is now before the Court.   Defendants filed a response (Doc. 190), and Plaintiff filed a reply (Doc. 220).   For the reasons set forth below, the Motion is **DENIED**.

<u>**Legal Standard**</u>

Plaintiff does not identify with particularity any Federal Rule by which he seeks relief. The Court finds that based on his request for relief, Rule 59 is appropriate.   Rule 59 allows the Court to grant a new trial on all or some of the issues, for any reasons for which a new trial has been granted in federal court.   FED. R. CIV. P. 59(a)(1)(A).   "In ruling on a motion for a new trial under Rule 59(a), the Court must determine whether the jury verdict was against the weight of the evidence or if the trial was unfair to the moving party."   *Purtell v. Mason*, No. 04 C 7005, 2006 WL 2037254, at 3 (N.D. Ill. July 18, 2006) (citing *Kapelanski v. Johnson*, 390 F.3d 525, 530 (7th Cir. 2004)).

In deciding whether a new trial is appropriate on fairness grounds, the Court must be guided by the principle that "civil litigants are entitled to a fair trial, not a perfect one," and "a new trial will not be ordered unless there was an error that caused some prejudice to the substantial rights of the parties."   *Lemons v. Skidmore*, 985 F.2d 354, 357 (7th Cir. 1993).

Further, Rule 59(e) provides a basis for relief where a party challenges the Court's application of the law to the facts of the case.   *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174-76 (1989) (concluding that Rule 59(e) was intended to apply to the reconsideration of matters encompassed within the merits of a judgment).   While Rule 59(e) permits a district court to exercise its discretion to correct its own errors, sparing the time and expense of further proceedings at the appellate level, *Divane v. Krull Elec. Co. Inc.*, 194 F.3d 845, 848 (7th Cir. 1999),

"ill-founded requests for reconsideration of issues previously decided … needlessly take the court's attention from current matters." *Berger v. Xerox Ret. Income Guar. Plan*, 231 F.Supp.2d 804, 820 (S.D. Ill. 2002).  Typically, Rule 59(e) motions are granted upon a showing of either newly discovered evidence not previously available or evidence in the record that clearly establishes a manifest error of law or fact.  *Sigsworth v. City of Aurora, Ill.*, 487 F.3d 506, 511-12 (7th Cir. 2007); *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n.3 (7th Cir. 2001). "[M]anifest error is not demonstrated by the disappointment of the losing party.  It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metropolitan Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal citations omitted).  A proper motion to reconsider does more than take umbrage and restate the arguments that were initially rejected during the summary judgment phase.  *County of McHenry v. Ins. Co. of the West*, 438 F.3d 813, 819 (7th Cir. 2006); *Ahmed v. Ashcroft*, 388 F.3d 247, 249 (7th Cir. 2004); *Oto*, 224 F.3d at 606.

## Discussion

In his motion for a new trial, Plaintiff includes numerous arguments and additional background facts.  Upon careful review of the motion, the Court finds Plaintiff sets forth the following issues.   The Court discusses each issue as set forth below.

### Admission of April 2014 Grievance

Plaintiff asserts his April 2014 grievance that requests an accommodation for the telephones should have been admitted and asserts that because it was not published to the jury he was deprived of a straightforward presentation of his case.

Plaintiff articulates that the grievance evidenced that the IDOC had notice of the failure to accommodate and the body of his complaint should have been admitted under the "present sense

impression" exception to the prohibition on hearsay.   Plaintiff also asserts his grievance contains "admissions by a party-opponent" and is considered a "business record" and, for these reasons, the entirety of the grievance was admissible.   In his reply, Plaintiff also asserts this grievance was necessary to show he notified IDOC of his phone issues.

For clarification, Plaintiff's April 7, 2014 grievance was admitted and provided to the jury (*see* Doc. 177-1 and Doc. 206 at 17-18)[2].   However, the institutional responses to the grievance were not admitted.   In his reply, Plaintiff asserts this was an error.   At the trial, counsel for Defendants argued that although the grievance itself was a business record and they had agreed to the same, they had not agreed that the content of the responses was a business record as the response contained hearsay statements.   Counsel for Plaintiff did not set forth any basis on which the responses would be excepted from the general hearsay rule of prohibition.   Moreover, Plaintiff was able to testify about the institution's response, and indicated that IDOC denied his request for an accommodation.   Because the jury was made aware of the grievance and the institution's response, there is no basis to find the jury's inability to actually see the response warrants a new trial.

### Admission of February 2015 and March 2015 Grievances

Plaintiff asserts he should have been allowed to enter his February 11 and March 27, 2015 grievances concerning Defendant Jenkins' actions during the transports at issue into evidence. Plaintiff asserts these grievances gave notice of the unacceptable treatment he received.

There was no attempt to admit the entirety of these grievances into the record at trial. Defendant Jenkins was questioned about the grievances by Plaintiff's attorney, and admitted that

---

[2] The Exhibit List indicates the grievance is dated April 4, 2014.   However, the grievance at issue was dated April 7, 2014 and was correctly identified as such during the trial.   The Court finds the misnomer of the date of this grievance on the Exhibit List to be immaterial and not dispositive of any issue in this case.

he responded to the February 11, 2015 grievance, and was aware of Plaintiff's bladder issues prior to the second, March 2015 trip because he had to respond to the February 2015 grievance.   These grievances were also subject to the Court's motions in limine ruling, in which the Court indicated that grievances are generally inadmissible hearsay, but such records may be admissible if they are relevant and are not being offered for the truth of the matter asserted.   Finally, the Court notes that portions of Defendant Jenkins' response to the March 2015 grievance were admitted for the purpose of setting forth prior consistent statements.

The jury was made aware of the filing of these grievances and their general content, and the Court finds that there is no basis for a new trial related to the non-admission of these grievances.

***Bar on "Scope" Objections***

Plaintiff complains that the Court's bar to "scope" objections and calling each witness only once deprived him of the opportunity to properly cross-examine witnesses on re-direct.   In particular, Plaintiff complains that this process allowed ADA Coordinator Lorie Cunningham to testify to two incompatible defenses: (1) that she was not aware of any request for accommodation by Plaintiff; and (2) that Plaintiff's request for accommodation was fulfilled, but not how Plaintiff wanted.

First, the parties agreed prior to trial that objections to scope would be waived for the sake of efficiency and to allow each witness to be called only one time.   Counsel still had opportunity to direct and re-direct and cross and re-cross as necessary.   There was no objection at trial by counsel as to this process.   With respect to Ms. Cunningham in particular, the Court has reviewed Ms. Cunningham's testimony and does not find the inconsistency described by Plaintiff. However, even if there was an inconsistency in her testimony, it should have been addressed during trial and Plaintiff's counsel had time and opportunity to address any purported

inconsistencies.   For these reasons, the testimony of Lorie Cunningham and the waiver of scope for witnesses present no basis on which to grant Plaintiff a new trial.

In his reply brief, Plaintiff asserts it was an abuse of discretion for the Court to excuse witnesses Christine Brown, Adam Puckett, and Lorie Cunningham before allowing Plaintiff's counsel to question them following Defendant's counsel's questioning.   Again, the parties agreed prior to trial that objections to scope would be waived, and counsel still had opportunity to direct and re-direct and cross and re-cross as necessary.   Counsel had the discretion to re-cross and it was not an error on the part of the Court if counsel determined not to take this action.

***Evidence of Restraints Used for Transport***

Plaintiff complains he was unable to present evidence concerning the type of restraints used when he was transported by Defendant Jenkins.   It appears Plaintiff takes issue with the Court's determination that Plaintiff's criminal record could be discussed at trial if Plaintiff was allowed to elicit testimony from Defendant Jenkins concerning why he used a black box restraint as opposed to a waist restraint for Plaintiff during transport.   In the Court's ruling on Plaintiff's motion in limine, the undersigned found that the probative value of Plaintiff's criminal convictions was generally outweighed by the danger of unfair prejudice.   However, the Court agreed with Defendants that if Plaintiff introduced evidence or put the appropriateness of his black box restraints at issue, Defendants would be allowed to introduce evidence of Plaintiff's criminal convictions to the extent the convictions were relevant to the decision to use particular restraints for transport (*see* Doc. 162 at 2-3).   Thus, by agreement, the parties determined that if Plaintiff did not discuss the appropriateness of the restraints used during transport, then Defendants would not attempt to enter into evidence Plaintiff's criminal convictions.   Plaintiff did not make any objection to this issue during trial.   For these reasons, the issue concerning Plaintiff's criminal

Page **6** of **11**

convictions and transport security does not warrant a new trial.

In his reply, Plaintiff asserts the decision related to this issue occurred at the final pretrial conference and asserts it is "unfair" that the Court denied his request for transcripts of the final pretrial conference.   The decision concerning this issue is memorialized in the Court's order on motions in limine (Doc. 162), and the parties agreed to the same.   The Court reiterates its previous finding that Plaintiff has failed to demonstrate that the transcript of the final pretrial conference supports an issue he has or seeks to appeal as no decision on the issue of restraints was rendered during the conference.   The decision was issued in the Court's order on the parties' motions in limine (which is already in the record).

### Marcus Jenkins Testimony

Plaintiff complains that his attorney was improperly prevented from impeaching Defendant Jenkins with prior inconsistent statements at trial.   In his reply, Plaintiff complains that the Court advised counsel that "we are not going to rehash deposition testimony."   Plaintiff's complaint lies with the Court's statements made during Mr. Martin's questioning of Defendant Jenkins on July 13, 2021, wherein the undersigned indicated Mr. Martin's line of questioning was not proper impeachment because it was not clear that Jenkins had said something during his trial testimony contrary to what he testified to during his deposition.   Mr. Martin understood and continued to question Defendant Jenkins.   The Court has reviewed the transcript and finds no error in its advisement to counsel.   Because the undersigned did not attack Mr. Martin's credibility, no curative instruction was necessary and this issue does not warrant a new trial.

### Restraints at Trial

Plaintiff asserts he is entitled to a new trial because he was shackled in view of some jury members at the hands and waist during jury selection.   Plaintiff asserts he had limited time to

bring this to his attorney's attention, and was only able to do so after the first day of trial.   Plaintiff correctly asserts that his attorney moved for a mistrial on this basis.

Plaintiff is correct insofar as his hands were restrained by handcuffs during jury selection while he was seated at a table.   The use of hand restraints during this time was in contravention of the Court's ruling on motions in limine, which indicated that security permitting, Plaintiff would not be handcuffed during the course of the trial.   After jury selection, the issue of the restraints was brought to the undersigned's attention by counsel for Plaintiff and redressed before the jury was empaneled and opening statements began.

In his motion for new trial, Plaintiff cites *Lemons v. Skidmore*, 985 F.2d 354 (7th Cir. 1993).   In *Lemons*, the Seventh Circuit remanded a prisoner's case for a new trial because the trial judge failed to determine whether restraints on the inmate-plaintiff were necessary (the magistrate delegated the decision to shackle the inmate to the Department of Corrections rather than making the determination himself).   *Lemons* is clearly distinguishable from the circumstances presented here.   First, in *Lemons*, the plaintiff was placed in handcuffs and leg irons for the duration of the trial, including while he was testifying.   Here, Plaintiff was in handcuffs for a brief period of time — only during jury selection.   Notably, Plaintiff was not handcuffed while testifying.   Further, in *Lemons*, the court remarked that although the plaintiff was already a convicted felon, a central issue to his case was whether or not he was a dangerous person and prone to outbursts of violence. This was not an issue in the case at bar.

In a recent decision by the Seventh Circuit, *Wilber v. Hepp*, -- F.4th-- , 2021 WL 5027514 (7th Cir. 2021), the Court granted a writ of habeas corpus, finding that the trial court failed to justify a need for visible restraints during closing arguments for a criminal defendant.   The undersigned finds that this case is also clearly distinguishable from the case at bar.   The court

Page **8** of **11**

based its decision on the fact that the court failed to address why visible restraints were necessary when the court had taken efforts up to that point to ensure restraints were out of the jury's view. *Id.* at 23.   In this instance, the use of hand restraints was in contravention of the Court's ruling on motions in limine.   With regard to prejudice, the court in *Wilber* found there was the "possibility that the restraints had a substantial adverse effect on the verdict."   *Id.*   In making this determination, the court emphasized that the defendant's visible confinement during closing arguments is the "stage of the trial that a jury is most likely to be focused on the defendant, as it considers the charge, weighs the evidence and arguments marshaled by counsel, and begins to ponder the defendant's fate."   *Id.*   The court also noted that because the defendant was accused of a violent crime, "his sudden appearance in multiple sets of manacles can only signal that the court believes he presents a danger to those in the courtroom."   *Id.*   The prejudices noted in *Wilber* are simply not present here.   Plaintiff's restraints were removed before a jury was empaneled and before any evidence was presented.   Even if a member of the venire had seen Plaintiff in restraints, the fact that they were removed for the entirety of the trial following jury selection would only signal that the Court did not believe Plaintiff presented a danger to those in the courtroom.

Based on a review of the totality of the circumstances and in consideration of the brief period of time Plaintiff was handcuffed in view of only some jury panel members, the Court finds no prejudice resulted and this issue does not warrant a new trial.

### Conferring with Counsel

In his reply, Plaintiff interjects a new issue and asserts he had insufficient time to confer

with counsel[3].   Plaintiff also asserts that he did not have his hearing aids and, as a result, he could not hear counsel's "whispers."   Based on a review of the trial transcript, Plaintiff clearly had notes and was able to communicate with counsel by way of note-taking.   The Court also afforded numerous breaks throughout trial, and Plaintiff could have conferred with counsel during these times.   If Plaintiff was having difficulty conferring with counsel, he should have brought it to the Court's attention during trial, but he did not (Plaintiff did, however, confer with the Court about other issues he had during trial).   The Court finds this issue does not warrant a new trial.

***Cumulative Error***

Although Plaintiff did not specifically argue there was cumulative prejudicial error, the Court finds it necessary to address the same due to the number of errors Plaintiff cites in his motion.   To prevail on a cumulative effect argument, a plaintiff must show: (1) multiple errors occurred at trial; and (2) those errors, in the context of the entire trial, were so severe as to have rendered the trial fundamentally unfair.   *United States v. Allen*, 269 F.3d 842, 847 (7th Cir. 2001). In consideration of the reasons already stated regarding the issues presented by Plaintiff, the undersigned does not find any error at trial.   Moreover, there is no basis for a finding that the trial was fundamentally unfair.

<u>**Conclusion**</u>

Based on the foregoing, Plaintiff's Motion for a New Trial (Doc. 181) is **DENIED**.

**IT IS SO ORDERED.**

**DATED: November 18, 2021**

---

[3]  In his initial motion, Plaintiff only indicated he had limited time to speak with his attorney regarding the restraint issue as an explanation for why counsel only moved for a mistrial on the second day of trial, after Christine Brown's testimony.

_s/_  _Reona J. Daly_
**Hon. Reona J. Daly**
**United States Magistrate Judge**